IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-578-D

JENNINE VLASATY, DEREK VLASATY, )
and N.V., )
           )
              Plaintiffs, )
           )
          v. )               **ORDER**
           )
WAKE COUNTY PUBLIC SCHOOL )
SYSTEM BOARD OF EDUCATION, )
KAREN HAMILTON, ROBERT BENDEL, )
WILLIAM HUSSEY, MARK JOHNSON, )
and NORTH CAROLINA STATE BOARD )
OF EDUCATION, )
           )
              Defendants. )

On November 21, 2017, N.V., a minor, Jennine Vlasaty, and Derek Vlasaty, individually and

on behalf of N.V. ("plaintiffs") filed a complaint against the Wake County Public School System

Board of Education ("WCPSS" or "Board"), Karen Hamilton (Assistant Superintendent of Special

Education Services for WCPSS, in her individual capacity) ("Hamilton"), and Robert Bendel

(Principal of Jones Dairy Elementary School, in his individual capacity) ("Bendel") (collectively,

"school defendants"), and the North Carolina State Board of Education, ("SBE"), Mark Johnson

(State Superintendent of Public Instruction, in his individual capacity) ("Johnson"), and William

Hussey, (North Carolina Department of Public Instruction Director of Exceptional Children, in his

individual capacity) ("Hussey") (collectively, "state defendants"). Plaintiffs allege violations of the

Individuals with Disabilities Education Improvement Act ("IDEA") and corresponding state law, and

discriminatory conduct against plaintiffs based on N.V.'s disability in violation of section 504 of the

Rehabilitation Act, Title II of the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983 [D.E. 1]. On January 25, 2018, the school defendants filed a partial motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted [D.E. 15] and filed a memorandum in support [D.E. 16]. On January 26, 2018, the state defendants filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted [D.E. 18] and filed a memorandum in support [D.E. 19]. On February 13, 2018, plaintiffs answered Bendel's counterclaim [D.E. 20]. On February 15, 2018, plaintiffs responded to the school defendants' partial motion to dismiss [D.E. 21], filed a memorandum in support [D.E. 22], responded to the state defendants' motion to dismiss [D.E. 23], and filed a memorandum in support [D.E. 24]. On March 1, 2018, the school defendants replied [D.E. 25]. As explained below, the court grants the school defendants' partial motion to dismiss and grants the state defendants' motion to dismiss.

I.

N.V. is an eleven year old child who lives with his parents in Wake County, North Carolina and attends Wake County public schools. See Compl. [D.E. 1] ¶¶ 36–37, 46–47.

> N.V. . . . has been diagnosed with Down syndrome; mild intellectual disability; Hirschprung's disease resulting in a permanent colostomy; receptive, expressive, and pragmatic/social language delays; attention deficit hyperactivity disorder (ADHD); obstructive sleep apnea; and sensorineural hearing loss in his right ear.

Id. ¶ 46. Before attending Wake County public schools, N.V. lived in Tennessee where his Individualized Educational Program ("IEP") permitted him to "enroll in his neighborhood school" and to "take the bus to school . . . every day." Id. ¶ 47. Plaintiffs allege that the WCPSS systematically "exclu[ded] N.V. from the regular education environment and . . . from his

2

nondisabled peers, solely on the basis of [his] disability," by removing him from a general educational setting and "provid[ing] all of his specially designed instruction in [a] segregated classroom, thereby denying [him] access to his nondisabled peers and to the general curriculum." Id. ¶¶ 48–49. Plaintiffs contend that N.V. does not have access to the general curriculum in his segregated environment and that he "only worked on IEP goals and skills that were not on grade level or even aligned to the general curriculum." Id. ¶¶ 50–51. N.V.'s parents repeatedly asked that the school defendants "allow N.V. to receive his specially designed instruction in the general education classroom." Id. ¶ 52. The school defendants denied their requests and lacked "cogent reasons, evidence-based support, or rational basis for their decision to exclude N.V." Id. ¶¶ 53–54. Plaintiffs also allege that N.V. was segregated from his peers despite N.V. making "the requisite progress under the law to justify remaining in the general education classroom" and "not exhibit[ing] any behavioral challenges" in a general education setting. Id. ¶ 56.

On November 24, 2015, plaintiffs filed a due process hearing petition and alleged several IDEA violations, claiming that WCPSS had denied N.V. access to a free appropriate public education ("FAPE"). See id. ¶ 292; [D.E. 15-3]. An Administrative Law Judge ("ALJ") conducted a hearing over eleven days between February 14, 2017, and March 9, 2017. See Compl. ¶ 301; [D.E. 15-1] 1. On June 26, 2017, the ALJ issued a final decision. [D.E. 15-1]; see Compl. ¶¶ 308–09. The ALJ found that "[plaintiffs] met their burden of proof . . . that [WCPSS] failed to ensure N.V. was placed in the [least restrictive environment ("LRE")] and had access to the general education curriculum during both the 2014–2015 and 2015–2016 school years." Compl. ¶ 309; [D.E. 15-1] 73–74.

On July 26, 2017, plaintiffs and WCPSS cross-appealed the ALJ decision. See Compl. ¶

310; [D.E. 15-2]. On August 23, 2017, the State Hearing Review Officer "upheld all issues in which [WCPSS] prevailed, and found against Plaintiffs on all issues in which Plaintiffs prevailed in the ALJ's final decision." Compl. ¶¶ 312–13; see [D.E. 15-2]. On November 21, 2017, plaintiffs filed this action seeking declaratory, injunctive, and monetary relief.

II.

The IDEA creates a federal grant program to assist state and local agencies to educate disabled children. See 20 U.S.C. § 1412(a). Under the IDEA, states must provide disabled children the opportunity to receive a free appropriate public education in the least restrictive environment. See id. § 1412(a)(5)(A); Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 748–49 (2017). When a school district determines that a child is eligible to receive special education services, the school district must develop an Individualized Education Program ("IEP") for the child. See MM ex rel. DM v. Sch. Dist., 303 F.3d 523, 526 (4th Cir. 2002). The IEP team—which includes the child's teachers, parents, a representative of the local educational agency, and other persons with specialized knowledge concerning the child—formulates the IEP. See id. at 526–27. The IEP must detail the student's current educational performance, include measurable annual goals for the student's education, describe the special educational services that the child will receive, and state the projected date that the services will begin. See id. at 527; E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ., 773 F.3d 509, 517–18 (4th Cir. 2014); Emery v. Roanoke City Sch. Bd., 432 F.3d 294, 297–98 (4th Cir. 2005); Kirkpatrick v. Lenoir Cty. Bd. of Educ., 216 F.3d 380, 383 (4th Cir. 2000).

Under the IDEA, an aggrieved party can file a civil action in a United States District Court without regard to the amount in controversy. See 20 U.S.C. § 1415(i)(2)(A). In reviewing the complaint, a court must review the records of the administrative proceeding based on the

4

preponderance of the evidence. See id. § 1415(i)(2)(C).

The standard of review does not invite "courts to substitute their own notions of sound educational policy for those of school authorities which they review." Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982). Rather, the court must "conduct a modified de novo review, giving 'due weight' to the underlying administrative proceedings." MM ex rel. DM, 303 F.3d at 530–31. "Due weight" means the court must consider the findings of fact made in the state administrative proceedings to be prima facie correct. J.P. ex rel. Peterson v. Cty. Sch. Bd., 516 F.3d 254, 259 (4th Cir. 2008); Doyle v. Arlington Cty. Sch. Bd., 953 F.2d 100, 105 (4th Cir. 1991). If both the ALJ and reviewing officer have reached the same conclusion, a court must afford greater deference to their findings. See MM ex rel. DM, 303 F.3d at 531. A reviewing officer must not depart from the normal process of fact finding in reaching a decision opposed to that of a hearing officer or the "decision may be entitled to little or no deference." See G ex rel. RG v. Fort Bragg Dependent Sch., 343 F.3d 295, 303 (4th Cir. 2003). If the district court does not follow the administrative factual findings, the district court must explain the reason for not doing so. See A.B. ex rel. D.B. v. Lawson, 354 F.3d 315, 325 (4th Cir. 2004).

Here, plaintiffs bear the burden of proof in challenging the state administrative decision. See Barnett ex rel. Barnett v. Fairfax Cty. Sch. Bd., 927 F.2d 146, 152 (4th Cir. 1991). Plaintiffs also bear the burden of proof in establishing that an IEP is deficient. See Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 62 (2005).

III.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–

5

63 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] his claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

The school defendants contend that the court should dismiss any IDEA claim based on events that occurred before November 24, 2014, based on the statute of limitations. See [D.E. 15] 1. In

support, the school defendants note that the IDEA requires a parent or agency to "request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows." 20 U.S.C. § 1415(f)(3)(C); see [D.E. 16] 4–6. North Carolina has adopted a one-year time limit. See N.C. Gen. Stat. § 115C-109.6(b);[1] P.L. ex rel. Liuzzo v. Charlotte-Mecklemburg Bd. of

---

[1] N.C. Gen. Stat. § 115C-109.6 states:

(a) Any party may file with the Office of Administrative Hearings a petition to request an impartial hearing with respect to any matter relating to the identification, evaluation, or educational placement of a child, or the provision of a free appropriate public education of a child, or a manifestation determination. The party filing the petition must notify the other party and the person designated under G.S. 115C-107.2(b)(9) by simultaneously serving them with a copy of the petition.

(b) Notwithstanding any other law, the party shall file a petition under subsection (a) of this section that includes the information required under IDEA and that sets forth an alleged violation that occurred not more than one year before the party knew or reasonably should have known about the alleged action that forms the basis of the petition. The issues for review under this section are limited to those set forth in subsection (a) of this section. The party requesting the hearing may not raise issues that were not raised in the petition unless the other party agrees otherwise.

(c) The one-year restriction in subsection (b) of this section shall not apply to a parent if the parent was prevented from requesting the hearing due to (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the petition, or (ii) the local educational agency's withholding of information from the parent that was required under State or federal law to be provided to the parent. . . .

(f) Subject to G.S. 115C-109.7, the decision of the administrative law judge shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education. Following the hearing, the administrative law judge shall issue a written decision regarding the issues set forth in subsection (a) of this section. The decision shall contain findings of fact and conclusions of law. Notwithstanding Chapter 150B of the General Statutes, the decision of the administrative law judge becomes final and is not subject to further review unless appealed to the Review Officer under G.S. 115C-109.9.

7

Educ., No. 3:07-CV-170-GCM, 2010 WL 2926129, at *4 (W.D.N.C. July 23, 2010) (unpublished) (error in original title). The school defendants argue that, because plaintiffs filed their IDEA due process hearing request on November 24, 2015, any IDEA claims that occurred before November 24, 2014, are time-barred. See [D.E. 16] 4–6. In support, the school defendants note that the ALJ received motions concerning the IDEA one-year statute of limitations and dismissed all claims and causes of action arising before November 24, 2014. [D.E. 15-1] 3 n.1. The State Hearing Review Officer noted that the plaintiffs appealed the dismissals and argued that at least one of the exceptions to the statute of limitations applied. See [D.E. 15-2] 4, 7–8. The State Hearing Review Officer rejected the argument and concluded that none of the exceptions applied. See id.

Plaintiffs respond that section 115C-109.6(b) is not a one-year statute of limitations because

---

(g) A copy of the administrative law judge's decision shall be served upon each party and a copy shall be furnished to the attorneys of record. The written notice shall contain a statement informing the parties of the availability of appeal and the 30-day limitation period for appeal as set forth in G.S. 115C-109.9.

(h) In addition to the petition, the parties shall simultaneously serve a copy of all pleadings, agreements, and motions under this Part with the person designated by the State Board under G.S. 115C-107.2(b)(9). The Office of Administrative Hearings shall simultaneously serve a copy of all orders and decisions under this Part with the person designated by the State Board under G.S. 115C-107.2(b)(9). . . .

(j) The State Board, through the Exceptional Children Division, and the State Office of Administrative Hearings shall develop and enter into a binding memorandum of understanding to ensure compliance with the statutory and regulatory procedures and timelines applicable under IDEA to due process hearings and to hearing officers' decisions, and to ensure the parties' due process rights to a fair and impartial hearing. This memorandum of understanding shall be amended if subsequent changes to IDEA are made. The procedures and timelines shall be made part of the Board's procedural safeguards that are made available to parents and the public under G.S. 115C-109.1 and G.S. 115C-109.5.

N.C. Gen. Stat. § 115C-109.6.

it says that a petition may allege only "violation[s] that occurred not more than one year before the party knew or reasonably should have known about the alleged action that forms the basis of the petition," N.C. Gen. Stat. § 115C-109.6(b), but does not explicitly set a filing deadline. See [D.E. 22] 6. The court rejects this argument. See Karen M. v. Bd. of Educ., 1:15-CV-48, 2015 WL 10490551, at *3 (W.D.N.C. Sept. 29, 2015) (unpublished). Accordingly, the statute of limitations for IDEA claims is one year from the date on which the parents knew or should have known about the alleged action that forms the basis for the complaint. On November 24, 2015, plaintiffs filed their IDEA due-process hearing request. See [D.E. 15-3]. Therefore, the statute of limitations bars any IDEA claim concerning events that occurred before November 24, 2014.

In opposition to this conclusion, plaintiffs make two arguments. First, they argue that the date on which they "knew or should have known" about the actions complained of is when they discovered that the WCPSS "violated their child's right to a FAPE." [D.E. 22] 7; see E.G. v. Great Valley Sch. Dist., No. CV 16-5456, 2017 WL 2260707, at *8–9 (E.D. Pa. May 23, 2017) (unpublished). The court rejects this argument. A "cause of action in an IDEA case accrues when the plaintiff knows of an allegedly faulty IEP or a disagreement over the educational choices that a school system has made for a student." Emery, 432 F.3d at 300 n.2 (quotation omitted); see R.R. ex rel. R. v. Fairfax Cty. Sch. Bd., 338 F.3d 325, 332–33 (4th Cir. 2003). Plaintiffs' complaint recounts N.V.'s parents' extensive involvement with his education, including that they knew of, and disagreed with, N.V.'s IEPs in each year for which he had an IEP. See Compl. ¶¶ 78–291.

Second, plaintiffs argue that the one-year statute of limitations does not apply

> if the parent was prevented from requesting the hearing due to (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the petition, or (ii) the local educational agency's withholding

of information from the parent that was required under State or federal law to be provided to the parent.

N.C. Gen. Stat. § 115C-109.6(c); see 20 U.S.C. § 1415(f)(3)(D). A local educational agency must provide "[w]ritten prior notice to the parents of the child . . . whenever [the agency] proposes to initiate or change[,] or refuses to initiate or change, the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child." 20 U.S.C. § 1415(b)(3). This written notice must include:

> (A) a description of the action proposed or refused by the agency;
> (B) an explanation of why the agency proposes or refuses to take the action and a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;
> (C) a statement that the parents of a child with a disability have protection under the procedural safeguards of this subchapter and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained;
> (D) sources for parents to contact to obtain assistance in understanding the provisions of this subchapter;
> (E) a description of other options considered by the IEP Team and the reason why those options were rejected; and
> (F) a description of the factors that are relevant to the agency's proposal or refusal.

Id. § 1415(c)(1).

Plaintiffs contend that the written notice that they received failed to inform them of WCPSS's decisions and prevented them from making an IDEA complaint both because they were unaware of certain decisions of N.V.'s IEP team and because they were not informed about their right to request a due process hearing. See [D.E. 22] 10; Compl. ¶¶ 93, 96, 119, 151, 185, 194. The school defendants respond that plaintiffs failed to make this allegation concerning the statute of limitations to the ALJ; therefore, plaintiffs have not exhausted their administrative remedies. See [D.E. 25] 3–4.

As mentioned, the IDEA grants plaintiffs the right to file a civil action in a federal court if

they are "aggrieved by the findings and decision" of either an "impartial due process hearing" conducted by a state or local agency, or a hearing to dispute certain formal decisions regarding a student's placement. 20 U.S.C. § 1415(f)(1)(A), (i)(2)(A), (k)(3)(A). The district court reviews the final findings and decision of the state decisionmaker. See 20 U.S.C. § 1415(i)(2)(A); E.L. ex rel. Lorsson, 773 F.3d at 514–15; MM ex rel. DM, 303 F.3d at 536. Plaintiffs must exhaust administrative remedies before a federal court can exercise jurisdiction over a claim. See E.L. ex rel. Lorsson, 773 F.3d at 513–15; MM ex rel. DM, 303 F.3d at 536; McGraw v. Bd. of Educ., 952 F. Supp. 248, 255 (D. Md. 1997); see also Scruggs v. Campbell, 630 F.2d 237, 239 (4th Cir. 1980). The IDEA's exhaustion requirement allows "states to use their special expertise to resolve educational disputes." E.L. ex rel. Lorsson, 773 F.3d at 514.

North Carolina provides a two-tiered administrative review process for IDEA claims. First, an aggrieved party files a petition for a due process hearing with the Office of Administrative Hearings, which appoints an ALJ to conduct the hearing. See N.C. Gen. Stat. § 115C-109.6(a), (j); E.L. ex rel. Lorsson, 733 F.3d at 513. Second, a party may appeal the ALJ's decision to a Review Officer that the State Board of Education appoints. See N.C. Gen. Stat. § 115C-109.9(a). Parties must obtain the State Hearing Review Officer's decision to exhaust their administrative remedies. See E.L. ex rel. Lorsson, 733 F.3d at 513–15.

Three exceptions exist to the IDEA exhaustion requirement: (1) when resort to the administrative process would have been futile; (2) when a school board failed to give parents proper notice of their administrative rights; or (3) when administrative exhaustion would have worked severe harm upon a disabled child. See MM ex rel. DM, 303 F.3d at 536; A.H. ex rel. H.C. v. Craven Cty. Bd. of Educ., No. 4:16-CV-282-BO, 2017 WL 3493612, at *3–5 (E.D.N.C. Aug. 14,

2017) (unpublished). Absent one of these exceptions, this court lacks jurisdiction over an unexhausted claim. See MM ex rel. DM, 303 F.3d at 536.

On this record, plaintiffs have plausibly alleged that the Board failed to give them proper notice, which would create an exception to the one-year statute of limitations. Moreover, the court cannot resolve this issue on the current record. The court will consider further arguments on the statute of limitations and this exception on a fully developed record.

B.

As for plaintiffs' claims against WCPSS under section 504, the ADA, and 42 U.S.C. § 1983 and plaintiffs' claims against Hamilton and Bendel under 42 U.S.C. § 1983, plaintiffs did not exhaust their administrative remedies. See [D.E. 15-3]. Thus, defendants argue that this court should dismiss those claims for failure to exhaust administrative remedies. See Fed. R. Civ. P. 12(b)(1).

A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary

judgment. See, e.g., Richmond, Fredericksburg & Potomac R.R., 945 F.2d at 768. However, if a defendant "contend[s] that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," then "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); see Kerns v. United States, 585 F.3d 187, 192–93 (4th Cir. 2009). Thus, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction," a court must "assume the truthfulness of the facts alleged" in the complaint and any attached materials. Kerns, 585 F.3d at 193; see Fed. R. Civ. P. 10(c).

The IDEA exhaustion requirement applies equally to claims under section 504, the ADA, and 42 U.S.C. § 1983 where the gravamen of the plaintiff's claim concerns the denial of a FAPE. See Fry, 137 S. Ct. at 749–55; Z.G. ex rel. C.G. v. Pamlico Cty. Pub. Schs. Bd. of Educ., No. 17-1290, 2018 WL 3428696, at *6–7 (4th Cir. July 16, 2018) (unpublished); A.H. ex rel. H.C., 2017 WL 3493612, at *4–5 (quotation omitted); see also 20 U.S.C. § 1415(l).

Under Fry, a court must "examine the substance of plaintiffs' claims to ensure that plaintiffs do not evade the IDEA's exhaustion requirement by artful pleading." A.H. ex rel. H.C., 2017 WL 3493612, at *4; see Fry, 137 S. Ct. at 755–56. A court should look to the substance "of the plaintiff's complaint to determine whether it seeks relief for the denial of a FAPE. If it does, administrative exhaustion requirements apply. . . [and] the plaintiff cannot escape [section] 1415(l) merely by bringing her suit under a statute other than the IDEA." O.V. v. Durham Pub. Sch. Bd. of Educ., No. 1:17-CV-691, 2018 WL 2725467, at *14 (M.D.N.C. June 6, 2018) (unpublished) (citation, quotation, and alteration omitted), report and recommendation adopted by 2018 WL

3370644 (M.D.N.C. July 10, 2018) (unpublished); see Fry, 137 S. Ct. at 752–56.

In Fry, "[t]he Supreme Court offered direction for determining whether the gravamen of a complaint against a school or board concerns the denial of a FAPE or instead addresses some other form of disability-based discrimination." A.H. ex rel. H.C., 2017 WL 3493612, at *4. "There are two questions the courts can ask when assessing the problematic claim." Id.

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

Fry, 137 S. Ct. at 756 (emphasis omitted); Z.G. ex rel. C.G., 2018 WL 3428696, at *6–7.

Plaintiffs' non-IDEA claims are fundamentally denial of FAPE claims. Plaintiffs' factual allegations are all school-specific and concern the proper setting in which to educate N.V. Plaintiffs' claims are uniquely tied to the school environment and to N.V.'s status as a student within the school. Plaintiffs could not bring substantially the same claims against other public facilities. Indeed, all claims for relief in the initial due-process complaint allege the denial of a FAPE. See [D.E. 15-3]. Accordingly, the IDEA exhaustion requirement applies, and plaintiffs have failed to exhaust the available administrative remedies concerning their section 504, ADA and section 1983 claims. See Fry, 137 S. Ct. at 752–56; Z.G. ex rel. C.G., 2018 WL 3428696, at *6–7; A.H. ex rel. H.C., 2017 WL 3493612, at *4–8.

14

## C.

Alternatively, plaintiffs have failed to state a claim against WCPSS under section 504, the ADA, or 42 U.S.C. § 1983 or against Hamilton and Bendel in their individual capacities under 42 U.S.C. § 1983.

As for plaintiffs' claims under section 504 and the ADA, both claims require a showing of discrimination based on a student's disability. In "limiting liability to discrimination solely by reason of handicap, Congress did not intend to create general tort liability for reasonable decisions made by professionals in the educational context." M.Y. ex rel. J.Y. v. Special Sch. Dist. No. 1, 544 F.3d 885, 890 (8th Cir. 2008) (quotation and alteration omitted); see Monahan v. Nebraska, 687 F.2d 1164, 1170–71 (8th Cir. 1982). The Fourth Circuit requires something more than a failure to provide a FAPE to state a claim under section 504. See Sellers ex rel. Sellers v. Sch. Bd., 141 F.3d 524, 528–29 (4th Cir. 1998). "[E]ither bad faith or gross misjudgment should be shown before a [section] 504 violation can be made out, at least in the context of education of handicapped children." Id. at 529; see S.B. ex rel. A.L. v. Bd. of Educ., 819 F.3d 69, 75–76 (4th Cir. 2016). The same requirements apply to ADA claims. Karen M., 2015 WL 10490551, at *4–5. The "bad faith or gross misjudgment standard is extremely difficult to meet," given the great deference that courts afford local school officials' educational judgments. Doe v. Arlington Cty. Sch. Bd., 41 F. Supp. 2d 599, 609 (E.D. Va. 1999), aff'd sub nom. Doe ex rel. Doe v. Arlington Cty. Sch. Bd., 210 F.3d 361 (4th Cir. 2000). Plaintiffs must show that school officials departed substantially from "accepted professional judgment, practice or standards as to demonstrate that the person[s] responsible actually did not base the decision on such a judgment." M.Y. ex rel. J.Y., 544 F.3d at 889.

Plaintiffs fail to plausibly allege bad faith or gross misjudgment on the part of the school

defendants. Despite plaintiffs' dissatisfaction with the actions taken concerning N.V., the complaint does not plausibly allege that the school defendants substantially departed from accepted professional judgment or standards. Thus, plaintiffs' section 504 claim and ADA claim fail, and the court dismisses plaintiffs' claims. See M.Y. ex rel. J.Y., 544 F.3d at 889–90; Monahan, 687 F.2d at 1170–71; Doe, 41 F. Supp. 2d at 609.

As for plaintiffs' section 1983 claims, "[b]ecause [the] IDEA provides a comprehensive remedial scheme for violations of its own requirements, . . . parties may not sue under section 1983 for an IDEA violation." Sellers ex rel. Sellers, 141 F.3d at 529. "The IDEA's comprehensive remedial scheme demonstrated Congress's intent that disabled children pursue claims to a free appropriate public education solely through the remedial mechanisms established by the statute." J.S. ex rel. Duck v. Isle of Wight Cty. Sch. Bd., 402 F.3d 468, 479 (4th Cir. 2005) (quotation omitted). To the extent that plaintiffs allege IDEA violations, they cannot state a claim under section 1983.

In opposition to this conclusion, plaintiffs argue that their section 1983 claims are not "entirely related to the IDEA violations" and "stand on their own as specific violations of the Fourteenth Amendment." [D.E. 22] 19. To state a claim under section 1983, plaintiffs must plausibly allege that the school defendants deprived them of a right secured by the Constitution and laws of the United States and that this depravation of a right was made under color of a state statute, ordinance, regulation, custom, or usage. See West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001); O.V., 2018 WL 2725467, at *26. Here, plaintiffs allege due process and equal protection violations.

First, plaintiffs allege that defendants violated N.V.'s Fourteenth Amendment right to due process. See [D.E. 22] 19–21. A state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Due process provides "a guarantee of fair procedures— typically notice and an opportunity to be heard." Kendall v. Balcerzak, 650 F.3d 515, 528–29 (4th Cir. 2011). To state a due process violation, plaintiffs must plausibly allege "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." Id. at 528.

North Carolina provides the right to a free public education "to every person of the State less than 21 years old, who has not completed a standard high school course of study." N.C. Gen. Stat. § 115C-1; see N.C. Const. art. I, § 15; Leandro v. State, 346 N.C. 336, 345, 488 S.E.2d 249, 254 (1997). Thus, N.V. has a legitimate claim of entitlement to a public education, which represents a property interest under the Due Process Clause. See Goss v. Lopez, 419 U.S. 565, 573 (1975). "With respect to public education, citizens possess a property interest not in the particulars of the educational experience, but rather in participation in the educational process as a whole." O.V., 2018 WL 2725467, at *27 (alteration omitted); see K.U. ex rel. Michael U. v. Alvin Indep. Sch. Dist., 991 F. Supp. 599, 606 (S.D. Tex. 1998), aff'd, 166 F.3d 341 (5th Cir. 1998). Plaintiffs' due process claim challenges the particular methods of alternate instruction provided to N.V., not whether N.V. is receiving a public education at all. Accordingly, plaintiffs' due process challenge "reprises [p]laintiffs' IDEA claims, which cannot form the basis of Section 1983 claims." O.V., 2018 WL 2725467, at *27; Sellers ex rel. Sellers, 141 F.3d at 529. Thus, plaintiffs' due process claim fails.

Second, plaintiffs allege that defendants violated the Equal Protection Clause. See [D.E. 22] 21–23. To state an equal protection violation, plaintiffs must plausibly allege facts sufficient to identify actual, similarly situated students to N.V. who were treated differently. See, e.g., Harron v. Town of Franklin, 660 F.3d 531, 537 (1st Cir. 2011) ("At a minimum, in order to provide fair notice to the defendants and state facially plausible legal claims, Harron had to identify his putative comparators . . . ." (quotation, citation, and alterations omitted)); Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1219–20 (10th Cir. 2011) (affirming dismissal of equal protection claims for failure to set out specific examples of similarly situated individuals and differing treatment); Ruston v. Town Bd. for Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) (affirming dismissal of equal protection claim when plaintiff failed to "allege specific examples" of persons similarly situated but treated differently); Veney v. Wyche, 293 F.3d 726, 730–31 (4th Cir. 2002); J.W. v. Johnston Cty. Bd. of Educ., No. 5:11-CV-707-D, 2012 WL 4425439, at *8–9 (E.D.N.C. Sept. 24, 2012) (unpublished). The complaint fails to plausibly allege disparate treatment between N.V. and any similarly situated students. Thus, plaintiffs' equal protection claim fails. Because plaintiffs have not plausibly alleged a constitutional violation unrelated to their IDEA claims, plaintiffs have not stated a claim under section 1983. Thus, the court grants the school defendants' motion to dismiss plaintiffs' section 1983 claim.

Even if plaintiffs could state a claim under section 1983, the school defendants argue that the court should dismiss plaintiffs' section 1983 claims against WCPSS because the complaint fails to allege that WCPSS had any policy or custom responsible for the alleged injury. See, e.g., Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 410 (2010); City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Local governments cannot be

18

liable under section 1983 based upon a theory of respondeat superior. Rather, liability attaches only if conduct directly causing the alleged deprivation is undertaken to effectuate an official policy or custom. See Brown, 520 U.S. at 410; Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell, 436 U.S. at 690–94; King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Santos v. Frederick Cty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Carter v. Morris, 164 F.3d 215, 218–19 (4th Cir. 1999); Perry v. Pamlico Cty., 88 F. Supp. 3d 518, 541–42 (E.D.N.C. 2015); Smith v. Atkins, 777 F. Supp. 2d 955, 966–67 (E.D.N.C. 2011).

Plaintiffs have not plausibly alleged that WCPSS had a "policy or custom" that accounted for N.V.'s alleged injury. Cf. Compl. ¶¶ 60–61 ("Between 2005 and 2014, Defendants only placed three to six percent of students with intellectual disabilities in the regular education setting); ¶¶ 81, 236 (noting that "none of N.V.'s general education teachers had ever taught a student with Down syndrome prior to N.V." (emphasis omitted)). Therefore, plaintiffs' section 1983 claim fails.

D.

As for plaintiffs' claims against Hamilton and Bendel in their individual capacities under section 1983, plaintiffs fail to state a claim against any of the school defendants under section 1983. Even if plaintiffs did state a claim under section 1983, defendants Hamilton and Bendel respond that they are entitled to qualified immunity.

Hamilton and Bendel are entitled to qualified immunity under section 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quotation omitted). "'Clearly established' means that, at the time of the [official's] conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is

unlawful." Id. (quotation omitted); see Kisela v. Hughes, 138 S. Ct. 1148, 1152–53 (2018) (per curiam); Hernandez v. Mesa, 137 S. Ct. 2003, 2007 (2017) (per curiam); Ziglar v. Abbasi, 137 S. Ct. 1843, 1866–67 (2017); White v. Pauly, 137 S. Ct. 548, 551–52 (2017) (per curiam); Mullenix v. Luna, 136 S. Ct. 305, 308–09 (2015) (per curiam); Taylor v. Barkes, 135 S. Ct. 2042, 2044–45 (2015) (per curiam); City & Cty. of S.F. v. Sheehan, 135 S. Ct. 1765, 1774 (2015); Carroll v. Carman, 135 S. Ct. 348, 350 (2014) (per curiam); Reichle v. Howards, 566 U.S. 658, 664 (2012); Pearson v. Callahan, 555 U.S. 223, 231 (2009); Adams v. Ferguson, 884 F.3d 219, 226 (4th Cir. 2018).

Although the Supreme Court "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." Kisela, 138 S. Ct. at 1152 (quotation and citation omitted); see Wesby, 138 S. Ct. at 590; Abbasi, 137 S. Ct. at 1867; White, 137 S. Ct. at 551; Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). In the Fourth Circuit, "existing precedent" is precedent of the United States Supreme Court, the Fourth Circuit, or the Supreme Court of North Carolina. See Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 176 (4th Cir. 2010).[2]

Although the right to a FAPE and the right to be educated in the LRE are clearly established, existing precedent of the United States Supreme Court and the Fourth Circuit did not clearly

---

[2] The United States Supreme Court has held that its precedent qualifies as controlling for purposes of qualified immunity. See Wesby, 138 S. Ct. at 591–93. The Supreme Court has reserved judgment on whether decisions of a federal court of appeals are a source of clearly established law for purposes of qualified immunity. See id.; Kisela, 138 S. Ct. at 1152–54; Taylor, 135 S. Ct. at 2044–45; Sheehan, 135 S. Ct. at 1776; Carroll, 135 S. Ct. at 350.

establish that Hamilton's and Bendel's roles in preparing N.V.'s IEP violated those rights.

Accordingly, Hamilton and Bendel are entitled to qualified immunity, and the court dismisses the

section 1983 claims against Hamilton and Bendel.[3]

## IV.

## A.

As for plaintiffs' claims against the state defendants, the state defendants move to dismiss

the claims for failure to exhaust administrative remedies because plaintiffs failed to name the state

defendants as parties in the administrative action under the IDEA. See [D.E. 19] 9–12; cf. [D.E. 15-

3]. Plaintiffs respond that administrative exhaustion is not required to sue a state educational agency

for violating the IDEA. See [D.E. 24] 13–14.

Section 1415(f) states:

> Whenever a complaint has been received under subsection (b)(6) or (k), the parents
> or the local educational agency involved in such complaint shall have an opportunity
> for an impartial due process hearing, which shall be conducted by the State
> educational agency or by the local educational agency, as determined by State law or
> by the State educational agency.

20 U.S.C. § 1415(f)(1)(A). The statutory requirements for implementing an impartial due process

hearing allow such a hearing to be conducted either "by the State educational agency or by the local

educational agency." Id. Moreover, the hearing officer is not permitted to be "an employee of the

State educational agency or the local education agency involved in the education or care of the

child." Id. § 1415(f)(3)(A)(i)(I). The state agency is, however, required to provide an impartial

---

[3] In light of the court's conclusions concerning exhaustion of administrative remedies and qualified immunity, the court declines to address the parties' arguments concerning the statute of limitations for any claims under section 504, the ADA, or section 1983.

appellate review "if the [due process] hearing . . . is conducted by a local educational agency." Id. § 1415(g)(1). The state agency's role as neutral arbiter is not final, and parties who are dissatisfied with the decision of the state agency can bring a civil action in district court. See id. § 1415(i)(2).

As discussed, North Carolina has a two-tier review process for IDEA claims. See E.L. ex rel. Lorsson, 773 F.3d at 513. First, the North Carolina Office of Administrative Hearings appoints an ALJ to conduct the initial due process hearing. Id.; see N.C. Gen. Stat. § 115C-109.6(a); (j). If not satisfied with the result from the ALJ, a party can seek review with a State Hearing Review Officer. See E.L. ex rel. Lorsson, 773 F.3d at 513; N.C. Gen. Stat. § 115C-109.9(a).

If a party contends that the North Carolina State Board of Education has violated the IDEA, nothing in the IDEA or North Carolina law exempts the North Carolina State Board of Education from participating in the due-process hearing as a party. Accordingly, plaintiffs were required to name the state defendants as parties in their due-process complaint. See E.L. ex rel. Lorsson, 773 F.3d at 513; McGraw, 952 F. Supp. at 254–55. They did not. See [D.E. 15-3]. Thus, the court dismisses as unexhausted their claims against the state defendants.

B.

The state defendants also argue that plaintiffs fail to state a claim against Johnson and Hussey under 42 U.S.C. § 1983. Plaintiffs base their claims on two factual allegations against Johnson and Hussey. First, plaintiffs allege that these defendants "encourage and allow LEAs to systematically segregate students with intellectual disabilities from their nondisabled peers," that they had knowledge of this segregation, and acted with deliberate indifference. See Compl. ¶¶ 66, 70–71, 284–91. Second, plaintiffs allege that the "Procedural Safeguards: Handbook on Parents' Rights . . . erroneously and misleadingly define[s] 'least restrictive environment.'" Id. ¶¶ 67–69.

22

As for the first claim, that Johnson and Hussey encourage and allow LEAs to segregate students and were deliberately indifferent to N.V.'s state claim, these claims expressly concern plaintiffs' arguments that N.V. has been denied a FAPE and are at the core of the IDEA claims. See Fry, 137 S. Ct. at 755–56; O.V., 2018 WL 2725467, at *26. As for the second claim, plaintiffs cite no law which entitles them to a particular definition in the "Handbook on Parents' Rights." The specific allegations against Johnson and Hussey overlap with plaintiffs' IDEA claims; therefore, plaintiffs have failed to state a claim under section 1983 against Johnson and Hussey. See Sellers ex rel. Sellers, 141 F.3d at 529; O.V., 2018 WL 2725467, at *26.

Alternatively, even if plaintiffs' IDEA claims do not overlap with the allegations against Johnson and Hussey, plaintiffs have failed to show a constitutional violation by Johnson and Hussey to state a claim under section 1983. And, even if plaintiffs could show an underlying constitutional violation unrelated to the IDEA, Johnson and Hussey are entitled to qualified immunity. Thus, plaintiffs have failed to state a claim against Johnson and Hussey, and the court dismisses plaintiffs' claims under section 1983 against them.

V.

In sum, the court GRANTS the school defendants' partial motion to dismiss [D.E. 15]. Plaintiffs' IDEA claims against WCPSS survive. The court DISMISSES without prejudice all other claims against the school defendants. The court GRANTS the state defendants' motion to dismiss [D.E. 18], and DISMISSES without prejudice the claims against the state defendants.

SO ORDERED. This 2 0 day of September 2018.

JAMES C. DEVER III
Chief United States District Judge

23